**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CITIBANK, N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF PKHL COMMERCIAL MORTGAGE TRUST 2021-MF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2021-MF, ACTING BY AND THROUGH ITS SPECIAL SERVICER, CWCAPITAL ASSET MANAGEMENT LLC,

        Plaintiff,

        v.

88TH AVENUE OWNER LLC; 89TH AVENUE OWNER LLC; MEYER CHETRIT; APM SERVICES GROUP CORP.; LIVE LION SECURITY LLC; ADD MECHANICAL INC.; ROCK ENVIRO LLC; FNA ENGINEERING SERVICES PC; BLONDIE'S TREEHOUSE, INC.; OZ STEEL INC.; 20/20 INSPECTIONS INC.; FRONTLINE INTERNATIONAL LLC; EMPIRE PUMP & MOTOR NY LLC; ENER-CON TECHNICAL SERVICES CORP.; INTEREBAR FABRICATORS, LLC; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; and NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,

        Defendants.

Civil Case No. 1:24-cv-03730

**COMPLAINT**

---

Plaintiff, Citibank, N.A., as Trustee on behalf of the Holders of PKHL Commercial Mortgage Trust 2021-MF, Commercial Mortgage Pass-Through Certificates, Series 2021-MF ("**Plaintiff**" or the "**Lender**"), acting by and through its Special Servicer, CWCapital Asset Management LLC, for its Complaint (the "**Complaint**") against Defendants 88th Avenue Owner LLC and 89th Avenue Owner LLC (collectively, the "**Borrower**"), Meyer Chetrit (the "**Guarantor**"), APM Services Group Corp. ("**APM**"), Live Lion Security LLC ("**Live Lion**"), ADD Mechanical Inc. ("**ADD**"), Rock Enviro LLC ("**Rock Enviro**"), FNA Engineering Services PC ("**FNA**"), Blondie's Treehouse, Inc. ("**BTI**"), OZ Steel Inc. ("**OZ Steel**"), 20/20 Inspections

Inc. ("**20/20 Inspections**"), Frontline International LLC ("**Frontline**"), Empire Pump & Motor NY LLC ("**Empire**"), Ener-Con Technical Services Corp. ("**Ener-Con**"), Interebar Fabricators, LLC ("**Interebar**"), The City of New York Environmental Control Board (the "**NYECB**") and the New York State Department of Taxation and Finance (the "**NYSDT**"), alleges as follows:

**PARTIES**

1.      Plaintiff is and was, at all times relevant, a New York common law trust for which Citibank, N.A. is the Trustee (the "**Trustee**").  The Trustee is a national banking association whose main office as specified in its Articles of Association is located in Sioux Falls, South Dakota. Plaintiff is therefore a citizen of South Dakota.

2.      Defendant 88th Avenue Owner LLC, is a limited liability company organized under the laws of the State of Delaware and, upon information and belief, maintains an address in New York c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018. Defendant 88th Avenue Owner LLC is named as a defendant to extinguish all estate, right, title, fee and interest it holds in and to certain real property located in Queens County at 152-01 88th Avenue and 150-13 89th Avenue (a/k/a 152-11 89th Avenue a/k/a 150-13 88th Avenue), Jamaica, New York 11432 and 88-20 153rd Street, Jamaica, New York 11432 and 152-09 88th Avenue, Jamaica, New York 11432 and commonly known as Parkhill City (the "**Real Property**"), together with the premises, improvements, fixtures, machinery, equipment, personalty and other rights or interests of any kind or nature located thereon (the "**Personal Property**," and together with the Real Property, as more particularly described in the Mortgage (as defined herein), the "**Property**"), and to determine its liabilities and obligations under the Loan Documents (as defined herein).

3.      Pursuant to the Borrower Organizational Chart attached to the Loan Agreement (as defined below), the sole member of Defendant 88th Avenue Owner LLC is 88th Avenue Mezz

LLC.  The sole member of 88th Avenue Mezz LLC is 88th Avenue Holder LLC.  The members of 88th Avenue Holder LLC are Meyer Chetrit and Joseph Chetrit.

4.      Meyer Chetrit is a natural person and citizen of the State of New York, having an address at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018.

5.      Joseph Chetrit is a natural person and citizen of the State of New York, having an address at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018.

6.      Accordingly, because the members of the sole member of its sole member are residents and citizens of the State of New York, Defendant 88th Avenue Owner LLC is a citizen of New York.

7.      Defendant 89th Avenue Owner LLC, is a limited liability company organized under the laws of the State of Delaware and, upon information and belief, maintains an address in New York at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018.  Defendant 89th Avenue Owner LLC is named as a defendant to extinguish all estate, right, title, fee and interest it holds in and to the Property, and to determine its liabilities and obligations under the Loan Documents (as defined herein).

8.      Pursuant to the Borrower Organizational Chart attached to the Loan Agreement, the sole member of Defendant 89th Avenue Owner LLC is 152-09 88th Owner LLC.  The sole member of 152-09 88th Owner LLC is CF Jamaica LLC.  The members of CF Jamaica LLC are Meyer Chetrit and Joseph Chetrit.

9.      Meyer Chetrit is a natural person and citizen of the State of New York, having an address at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018.

10.     Joseph Chetrit is a natural person and citizen of the State of New York, having an address at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 15th Floor, New York, New York 10018.

11.     Accordingly, because the members of the sole member of its sole member are residents and citizens of the State of New York, Defendant 89th Avenue Owner LLC is a citizen of New York.

12.     Defendant Meyer Chetrit is a natural person having an address at c/o The Chetrit Group, LLC, 512 Seventh Avenue, 16th Floor, New York, New York 10018.  Mr. Chetrit is being named as a defendant to preserve Plaintiff's right to seek a deficiency judgment or any other amounts owed on account of Mr. Chetrit's liability and obligations under the Guaranty (defined below).

13.     Defendant APM Services Group Corp., a New York corporation, having an address at 146 Walworth Street, Brooklyn, New York 11205, is named as a defendant due to a mechanic's lien in the amount of $21,145.00, filed on December 30, 2022 (the "**APM Lien**").

14.     Defendant Live Lion Security LLC, a New York limited liability company, having an address at 5014 16th Avenue, Suite 231, Brooklyn, New York 11204, is named as a defendant due to a mechanic's lien in the amount of $19,455.62, filed on February 27, 2023 (the "**Live Lion Lien**").

15.     Defendant ADD Mechanical Inc., a New York corporation, having an address at 134 Evergreen Avenue, Brooklyn, New York 11206, is named as a defendant due to (i) a

mechanic's lien in the amount of $186,784.92, which was filed on March 28, 2023, and (ii) a mechanic's lien in the amount of $35,003.31, which was filed on June 28, 2023 (collectively, the "**ADD Liens**").

16.     Defendant Rock Enviro LLC, a New York limited liability company, having an address at 170 Lee Avenue, Brooklyn, New York 11211, is named as a defendant due to a mechanic's lien in the amount of $13,325.00, which was filed on May 24, 2023 (the "**Rock Enviro Lien**").

17.     Defendant FNA Engineering Services PC, a New Jersey professional corporation, having an address at 999 Riverview Drive, Suite 204, Totowa, New Jersey 07512, is named as a defendant due to a mechanic's lien in the amount of $25,867.00, which was filed on June 21, 2023 (the "**FNA Lien**").

18.     Defendant Blondie's Treehouse, Inc., a New York corporation, having an address at 431 Fayette Avenue, Mamaroneck, New York 10543, is named as a defendant due to a mechanic's lien in the amount of $8,622.89, which was filed on May 2, 2023 (the "**BTI Lien**").

19.     Defendant OZ Steel Inc., a New York corporation, having an address at 236B 6th Street, Brooklyn, New York 11215, is named as a defendant due to a mechanic's lien in the amount of $23,000.00, which was filed on November 23, 2022 (the "**OZ Lien**").

20.     Defendant 20/20 Inspections Inc., a New York corporation, having an address at 3716 Fort Hamilton Parkway, Brooklyn, New York 11218, is named as a defendant due to a mechanic's lien in the amount of $38,526.00, which was filed on December 5, 2022 (the "**20/20 Lien**").

21.     Defendant Frontline International LLC, a New York limited liability company, having an address at 33 Nassau Avenue, Brooklyn, New York 11222, is named as a defendant due

to a mechanic's lien in the amount of $205,735.27, which was filed on April 28, 2023 (the "**Frontline Lien**").

22.     Defendant Empire Pump & Motor NY LLC, a New York limited liability company, having an address at 25-25 Borden Avenue, Long Island City, New York 11101, is named as a defendant due to a mechanic's lien in the amount of $4,151.41, which was filed on September 22, 2023 (the "**Empire Lien**").

23.     Defendant Ener-Con Technical Services Corp., a New York corporation, having an address at 1233 McDonald Avenue, Brooklyn, New York 11230, is named as a defendant due to a mechanic's lien in the amount of $12,700.28, which was filed on November 16, 2023 (the "**Ener-Con Lien**").

24.     Defendant Interebar Fabricators, LLC, a Delaware limited liability company, having an address at 10800 Biscayne Boulevard, Suite 830, Miami, Florida 33161, is named as a defendant due to a mechanic's lien in the amount of $56,339.03, which was filed on February 1, 2024 (the "**Interebar Lien**").

25.     The City of New York Environmental Control Board is named as a defendant due to possible unpaid amounts that may be owed in connection with the Property, including but not limited to violation # 39073519R in the amount of $625.00, violation # 39073518P in the amount of $625.00, violation # 39073875N in the amount of $625.00, violation # 11834622M in the amount of $475.00 and violation # 39519388J in the amount of $6,250.00.

26.     The New York State Department of Taxation and Finance is made a defendant for the purpose of foreclosing liens, if any, against the Property which accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid amounts,

including but not limited to unpaid taxes and judgments, which are or may be due or may become due to the State of New York from any owner of record of the Property.

## JURISDICTION AND VENUE

27.     Jurisdiction over this matter properly rests within this Court pursuant to 28 U.S.C. § 1332(a) in that this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

28.     Plaintiff is a national banking association and, pursuant to 28 U.S.C. § 1348, is a citizen and resident of the State of South Dakota.

29.     For purposes of diversity jurisdiction, none of the Defendants are residents or citizens of the State of South Dakota.

30.     Defendant 88th Avenue Owner LLC is a citizen of the State of New York for purposes of diversity jurisdiction because it is a Delaware limited liability company for which each of the members of the sole member of its sole member are residents and citizens of the State of New York

31.     Defendant 89th Avenue Owner LLC is a citizen of the State of New York for purposes of diversity jurisdiction because it is a Delaware limited liability company for which each of the members of the sole member of its sole member are residents and citizens of the State of New York.

32.     Defendant Meyer Chetrit is a citizen of the State of New York for purposes of diversity jurisdiction because he is a natural person that resides in the State of New York.

33.     Defendant APM is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

34.    Upon information and belief, Defendant Live Lion is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York limited liability company for which each of its members are residents and citizens of the State of New York.

35.    Defendant ADD is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

36.    Upon information and belief, Defendant Rock Enviro is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York limited liability company for which each of its members are residents and citizens of the State of New York.

37.    Defendant FNA is a citizen of the State of New Jersey for purposes of diversity jurisdiction because it is a New Jersey professional corporation with its principal place of business in New Jersey.

38.    Defendant BTI is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

39.    Defendant OZ Steel is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

40.    Defendant 20/20 Inspections is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

41.    Upon information and belief, Defendant Frontline is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York limited liability company for which each of its members are residents and citizens of the State of New York.

42.     Upon information and belief, Defendant Empire is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York limited liability company for which each of its members are residents and citizens of the State of New York.

43.     Defendant Ener-Con is a citizen of the State of New York for purposes of diversity jurisdiction because it is a New York corporation with its principal place of business in New York.

44.     Upon information and belief, Defendant Interebar is a citizen of the State of Florida for purposes of diversity jurisdiction because it is a Delaware limited liability company for which each of its members are residents and citizens of the State of Florida.

45.     Defendant NYECB is a department of the New York city government and citizen of the State of New York for purposes of diversity jurisdiction.

46.     Defendant NYSDT is a department of the New York state government and citizen of the State of New York for purposes of diversity jurisdiction.

47.     Venue is proper in this district (i) pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the Property this is the subject of the action is located in this district and the related actions that give rise to Plaintiff's claims took place in this district; and (ii) because the Borrower irrevocably waived any objection to the laying of venue in this Court and waived any claim that an action brought in this Court has been brought in an inconvenient forum.

## FACTS

### A.    The Loan

48.     On or about June 30, 2021, Starwood Mortgage Capital LLC and Bank of Montreal (collectively, the "**Original Lender**") made a loan to Borrower in the original principal amount of $225,000,000.00 (the "**Loan**") pursuant to the terms of a Loan Agreement dated as of June 30, 2021 (the "**Loan Agreement**").

49.     A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1**.

50.     To evidence its indebtedness for the Loan, Borrower, as obligor, (i) duly executed, acknowledged and delivered to Bank of Montreal, as obligee, that certain Promissory Note (Note A-1) dated June 30, 2021 in the amount of $112,500,000 (the "**Note A-1**") and (ii) duly executed, acknowledged and delivered to Starwood Mortgage Capital LLC, as obligee, that certain Promissory Note (Note A-2) dated June 30, 2021 in the amount of $112,500,000 (the "**Note A-2**" and together with Note A-1, the "**Notes**").  The Notes obligated Borrower to pay Original Lender, its successors or assigns, the principal sum of $225,000,000.00, plus interest and other amounts owing under the Loan.

51.     True and correct copies of Note A-1 and Note A-2 are attached hereto as **Exhibits 2 and 3**, respectively.

52.     To secure its payment and performance obligations under the Loan, Borrower, as obligor and mortgagor, executed and delivered to Original Lender, as obligee and mortgagee, a Consolidated, Amended and Restated Mortgage and Security Agreement dated as of June 30, 2021 (the "**Mortgage**").  The Mortgage granted a security interest in the Property to Original Lender, its successors or assigns, to secure Borrower's obligations under the Loan.

53.     A true and correct copy of the Mortgage is attached hereto as **Exhibit 4**.

54.     The Mortgage was duly filed and recorded in the Office of the City Register of the City of New York, in the county in which the Property was then and is now situated, on July 9, 2021, under City Register File Number 2021000262209.  The block and lot indexing for the Property is as follows: Block 9695, Lots 6 and 14, Borough of Queens and Block 9697, Lot 52, Borough of Queens.

55.    Upon information and belief, the applicable recording taxes due, if any, were duly paid at the time of recording of the Mortgage.

56.    To further secure its payment and performance of obligations under the Loan, Borrower, as obligor and assignor, executed and delivered to Original Lender, as obligee and assignee, an Assignment of Leases and Rents dated as of June 30, 2021 (the "**ALR**").  The ALR granted a security interest in the Rents (as defined in the ALR) to secure Borrower's obligations under the Loan.

57.    The ALR was duly filed and recorded in the Office of the City Register of the City of New York, in the county in which the Property was then and is now situated, on July 9, 2021, under City Register File Number 2021000262210.

58.    A true and complete copy of the ALR is attached as **<u>Exhibit 5</u>**.

59.    As an inducement for Original Lender to make the Loan and to secure repayment of the Loan, Guarantor executed and agreed to be bound by a Guaranty of Recourse Obligations (Unsecured) dated as of June 30, 2021 (the "**Guaranty**") in favor of Original Lender, its successors or assigns.

60.    A true and correct copy of the Guaranty is attached hereto as **<u>Exhibit 6</u>**.

61.    Pursuant to the Guaranty, the Guarantor unconditionally and irrevocably guaranteed, in his personal capacity, the "the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable . . .."

62.    The term "<u>Guaranteed Obligations</u>" is defined in Section 1.2(a) of the Guaranty to include "Borrower's Recourse Liabilities" and payment of the Debt "from and after the date that any Springing Recourse Event occurs . . .."

63.    The term "Debt" is defined in the Loan Agreement to mean "the Outstanding Principal Balance together with all interest accrued and unpaid thereon and all other sums (including the Spread Maintenance Premium and/or Exit Fee) due to Lender I respect of the Loan under the Note, this Agreement, the Security Instrument or any other Loan Document."

64.    The term "Springing Recourse Event" is defined in Section 3.1(c)(G) of the Loan Agreement to include the failure by Borrower "to obtain Lender's prior written consent to any Transfer (excluding Permitted Transfers), as required by this Agreement or in the Security Instrument; . . .."

65.    The Loan Agreement, Notes, Mortgage, ALR, Guaranty and all other documents executed in connection with the Loan shall hereinafter be collectively referred to as the "Loan Documents".

66.    The Loan Documents are governed by New York law.

**B.    Transfer of the Loan to Plaintiff**

67.    Bank of Montreal delivered Note A-1 to and executed an Allonge in favor of the Lender effective as of July 29, 2021.  A true and correct copy of the Allonge is affixed to Note A-1, which is attached hereto as Exhibit 2.

68.    Starwood Mortgage Capital LLC delivered Note A-2 to and executed an Allonge in favor of the Lender effective as of July 29, 2021.  A true and correct copy of the Allonge is affixed to Note A-2, which is attached hereto as Exhibit 3.

69.    Original Lender assigned its interest in the Mortgage to the Lender by virtue of an Assignment of Mortgage dated as of July 15, 2022 to be effective as of July 29, 2021 (the "**Mortgage Assignment**"), which was duly filed and recorded in the Office of the City Register

of the City of New York, in the county in which the Property was then and is now situated, on July 22, 2022, under City Register File Number 2022000293515.

70.    A true and correct copy of the Mortgage Assignment is attached hereto as **Exhibit 7**.

71.    Original Lender assigned its interest in the ALR to Lender pursuant to an Assignment of ALR dated as of July 15, 2022 to be effective as of July 29, 2021 (the "**ALR Assignment**"), which was duly filed and recorded in the Office of the City Register of the City of New York, in the county in which the Property was then and is now situated, on July 22, 2022, under City Register File Number 2022000293516.

72.    A true and correct copy of the ALR Assignment is attached hereto as **Exhibit 8**.

73.    Original Lender assigned its interest in the Loan Agreement and Guaranty to the Lender by virtue of a General Assignment effective as of July 29, 2021.

74.    A true and correct copy of the General Assignment is attached hereto as **Exhibit 9**.

75.    As a result of the foregoing assignments, Plaintiff is the valid transferee and the current owner and holder of the Notes, Mortgage, and all other Loan Documents.  CWCapital Asset Management LLC is the Special Servicer of the Loan, and in that capacity has the right to initiate, prosecute, and maintain this action on behalf of Plaintiff, as assignee, owner and holder of the Loan and Loan Documents.

**C.    The Borrower's Defaults**

76.    Pursuant to Section 8.1(a) of the Loan Agreement, an Event of Default exists:

> (i) if any portion of the Debt is not paid when due (including, without limitation, the failure of Borrower to repay the entire outstanding principal balance of the Note in full on the Maturity Date), and deposit to the Reserve Accounts is not made on the required deposit date therefor or any other amount under Section 2.9.2(b)(i) through (v) hereof is not paid in full on each Payment

Date (unless sufficient funds are not available in the relevant Subaccount on the applicable date);

\* \* \*

(iv) if Borrower Transfers or otherwise encumbers any portion of the Property or the Collateral in violation of the provision of this Agreement, or Article 6 of the Security Instrument or any Transfer is made in violation of the provision of <u>Section 5.2.10</u> hereof;

\* \* \*

(x) if Borrower breaches any of its respective covenants contained in <u>Section 5.2</u> hereof or any covenant contained in <u>Section 5.1.11</u> or <u>5.1.35</u> hereof;

\* \* \*

(xviii) if Borrower fails to obtain or maintain an Interest Rate Cap Agreement or delivery any Replacement Interest Rate Cap Agreement in accordance with <u>Section 2.6</u>;

\* \* \*

(xxvii) if Borrower shall continue to be in Default under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not specified in subsections (i) to (xxvi) above, for ten (10) days after notice to Borrower from Lender, in the case of any Default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other Default; . . ..

77.    Pursuant to Section 5.1.33 of the Loan Agreement, Borrower had the right to convert the entire Property to a condominium form of ownership (the "**Condominium Conversion**"), but only upon the "full satisfaction of all of the conditions precent set forth in Section 5.1.33(b) [of the Loan Agreement]."

78.    Borrower completed the Condominium Conversion on June 22, 2022, without satisfying the applicable requirements of Section 5.1.33(b) of the Loan Agreement.

79.    Completion of the Condominium Conversion without satisfying the requirements of Section 5.1.33(b) of the Loan Agreement constitutes an Event of Default under Sections 8.1(a)(iv) of the Loan Agreement (the "**Condo Conversion Default**").

80.    Pursuant to Section 5.2.16(a) of the Loan Agreement, Borrower was prohibited from commencing any work at the Release Parcel (as defined in the Loan Agreement) until the Condominium Conversion occurred **and** the Release Parcel was released in accordance with Section 2.5.2 of the Loan Agreement.

81.    In addition to Borrower's improper completion of the Condominium Conversion, Borrower never satisfied the conditions contained in Section 2.5.2 of the Loan Agreement necessary to obtain the release of the Release Parcel and, as a result thereof, the Release Parcel remains subject to the lien of the Mortgage.

82.    Notwithstanding its failure to obtain the release of the lien of the Mortgage from the Release Parcel, Borrower commenced work on the Release Parcel in violation of Section 5.2.16 of the Loan Agreement, thereby triggering an additional Event of Default under Section 8.1(a)(x) of the Loan Agreement (the "**Release Parcel Default**").

83.    By letter dated September 27, 2022, the Lender notified Borrower of the Condo Conversion Default and the Release Parcel Default, and advised the Guarantor that, as a result thereof, his full recourse liability had been triggered under Section 3.1(c)(G) of the Loan Agreement.

84.    A true and correct copy of the September 27, 2022 letter is attached hereto as **Exhibit 10**.

85.     By letter dated May 21, 2024, written demand was made upon the Guarantor for the payment of (i) the Debt and (ii) all of the Lender's costs, fees and expenses incurred in enforcing its rights under the Loan Documents, including the Guaranty.

86.     A true and correct copy of the May 21, 2024 letter is attached hereto as **Exhibit 17**.

87.     Despite demand for payment, Guarantor has failed and refused to pay the Debt.

88.     Pursuant to Section 2.3.2 of the Loan Agreement, Borrower was obligated to make a payment to Lender equal to the interest on the Outstanding Principal Balance of the Loan on the ninth day of each calendar month from August 9, 2021 through June 9, 2023 (the "**Monthly Debt Service Payment Amount**").

89.     Borrower failed to pay the Monthly Debt Service Payment Amount beginning in January of 2023 and continuing through June of 2023 (the "**Payment Default**").

90.     By letters dated March 15, 2023, May 30, 2023 and July 21, 2023, Borrower was notified that an Event of Default had occurred due to its failure to pay the Monthly Debt Service Payment Amount, when due under the Loan Agreement, for each of January through June of 2023, and demand was made for payment of all amounts then due and owing.

91.     True and correct copies of the March 15, 2023, May 30, 2023 and July 21, 2023 letters are attached hereto as **Exhibits 11-13**, respectively.

92.     Despite the demand for payment, Borrower failed and refused to cure the Payment Default.

93.     Borrower also failed to pay the Loan in full on the Stated Maturity Date of July 9, 2023 (the "**Maturity Default**").

94.     By letter dated July 21, 2023, a copy of which is attached hereto as Exhibit 13, Plaintiff notified Borrower that an Event of Default had occurred as a result of the Maturity Default and demanded payment of all unpaid amounts then due and owing under the Loan Documents.

95.     To date, the Borrower has failed and refused to pay the Loan in full as required by the Loan Documents.

96.     Pursuant to Section 5.2.2 of the Loan Agreement, "Borrower shall not create, incur, assume or suffer to exist any Lien on any portion of the Property or permit any such action to be taken, except for Permitted Encumbrances."

97.     The Loan Agreement defines "Lien" to include "mechanic's, materialmen's and other similar liens and encumbrances."

98.     The APM Lien, Live Lion Lien, ADD Liens, Rock Enviro Lien, FNA Lien, BTI Lien, OZ Lien, 20/20 Lien, Frontline Lien, Empire Lien, Ener-Con Lien and Interebar Lien (collectively, the "**Mechanics' Liens**") each constitute an impermissible Lien under the Loan Agreement.

99.     By letters dated May 30, 2023 and April 30, 2024, the Lender demanded that Borrower provide the Lender with (a) evidence satisfactory to show that the work described in the Mechanics' Liens was in fact performed; (b) to the extent already paid, proof of payment for the work itself or the Mechanics' Liens; and (c) evidence satisfactory to the Lender of the release of the Mechanics' Liens.

100.    A true and correct copy of the April 30, 2024 letter is attached hereto as **Exhibit 14**.

101.    To date, Borrower has failed or refused to discharge the Mechanics' Liens from the Property.

102.    Borrower's failure to discharge each of the Mechanics' Liens constitutes an additional Event of Default pursuant to Section 8.1(a)(x) of the Loan Agreement (collectively, the "**Mechanics' Lien Default**").

103.    Pursuant to Section 7.6.1 of the Loan Agreement, Borrower is required to deposit the Supplemental Income Reserve Additional Deposit Amount (as defined in the Loan Agreement) as determined by Lender, in its reasonable discretion, within fifteen (15) Business Days of the Borrower's receipt of notice from the Lender that the Property had not achieved a 6.5% Transient Debt Yield (as defined in the Loan Agreement).

104.    Pursuant to electronic mail communications from the Lender between November 29, 2022 and December 7, 2022 (collectively, the "**Email Demands**"), and letters dated March 15, 2023, May 30, 2023 and July 21, 2023, Borrower was notified that the Property had not achieved the required 6.5% Transient Debt Yield and demand was made for the payment of the required Supplemental Income Reserve Additional Deposit Amount of $6,638,544.41.

105.    True and correct copies of the E-Mail Demands are attached hereto as **Exhibit 15**.

106.    In violation of Section 7.6.1 of the Loan Agreement, Borrower has failed and refused to deposit the required Supplemental Income Reserve Additional Deposit Amount, and said failure constitutes an additional Event of Default under Section 8.1(a)(i) of the Loan Agreement (the "**Supplemental Income Reserve Default**").

107.    Pursuant to Section 2.6 of the Loan Agreement, Borrower was required to maintain an Interest Rate Cap Agreement (as defined in the Loan Agreement).

108.    Borrower's Interest Rate Cap Agreement expired on July 15, 2023.

109.    By letter dated July 21, 2023, a copy of which is attached hereto as Exhibit 13, the Lender demanded, in accordance with Section 2.6 of the Loan Agreement, that Borrower purchase

a replacement Interest Rate Cap Agreement and provide written evidence of the same to the Lender within five (5) business days of the date of that letter.

110.    Borrower failed to procure the replacement Interest Rate Cap Agreement, which failure constituted an Event of Default under Section 8.1(a)(xviii) of the Loan Agreement.  (the "**Interest Rate Cap Agreement Default**").

111.    Pursuant to Section 5.1.11(b) of the Loan Agreement, Borrower and Guarantor are required to provide audited, annual financial statements within ninety (90) days following the end of each Fiscal Year (as defined in the Loan Agreement).

112.    Pursuant to Section 5.1.11(c) of the Loan Agreement, within twenty (20) days after the end of each calendar quarter, Borrower is required to provide (i) a rent roll; (ii) quarterly and year-to-date operating statements noting Net Operating Income, Gross Income from Operations and Operating Expenses; and (iii) "upon Lender's request, other information necessary and sufficient to fairly represent the financial position and results of operation of the Property" during the applicable calendar quarter.

113.    By letter dated April 30, 2024, the Lender demanded that (i) the Borrower and Guarantor provide audited, annual financial statements for Fiscal Year 2023 (the "**2023 Annual Reporting**") and (ii) Borrower provide its first quarter 2024 financial reporting, including (a) a first quarter rent roll; (b) the first quarter operating statements; (c) a Net Cash Flow Schedule; and (d) an accompanying Officer's Certificate (the "**Q1 2024 Reports**").

114.    The failure to provide the 2023 Annual Reporting and/or Q1 2024 Reports within seventeen (17) Business Days after receipt of the April 30, 2024 letter constitutes an additional Event of Default under Sections 5.1.11(k) and 8.1(a)(x) of the Loan Agreement.

115.    Despite demand therefore, as of the date hereof, neither the 2023 Annual Reporting nor the Q1 2024 Reports have been provided in violation of Section 5.1.11 of the Loan Agreement (collectively, the "**Financial Reporting Defaults**").

116.    By letter dated May 16, 2024, the Lender notified Borrower of the continuance of the Condo Conversion Default, the Release Parcel Default, the Payment Default, the Maturity Default, the Mechanics' Lien Default, the Supplement Income Reserve Default, the Interest Rate Cap Agreement Default and the Financial Reporting Defaults.

117.    A true and correct copy of the May 16, 2024 letter is attached hereto as **Exhibit 16**.

### FIRST CAUSE OF ACTION
**(Foreclosure of the Mortgage Against all Defendants)**

118.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

119.    Each of the Condo Conversion Default, the Release Parcel Default, the Payment Default, the Maturity Default, the Mechanics' Lien Default, the Supplement Income Reserve Default, the Interest Rate Cap Agreement Default and the Financial Reporting Defaults constitutes an Event of Default under the Loan Agreement, which entitles Plaintiff to exercise its rights and remedies under the Loan Documents, including the right, pursuant to Section 7.1(b) of the Mortgage and Section 8.2 of the Loan Agreement, to foreclose upon the Mortgage.

120.    Pursuant to Section 7.1 of the Mortgage, upon the occurrence of an Event of Default, Plaintiff may take the following actions without notice or demand to the Borrower:

> (b) institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Security Instrument for the balance of the Debt and the Other Obligations not then due, unimpaired and without loss of priority;

(d) sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale (to the extent permitted by applicable law) or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; . . .

*        *        *

(g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof; . . ..

121.    Section 8.2(a) of the Loan Agreement provides:

[u]pon the occurrence and during the continuance of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under this Agreement or any of the other Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Debt shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singularly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth herein or in the other Loan Documents. Without limiting the generality of the foregoing, Borrower agrees that if an Event of Default is continuing (i) Lender shall not be subject to any "one action" or "election of

remedies" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and the Security Instrument has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt or the Obligations have been paid in full . . ..

122.    Because the Loan matured in September of 2023, the full amount of the Debt is currently due and payable.

123.    Despite demands for payment, the Borrower has failed to pay the Debt and remains in default.

124.    Pursuant to the Loan Documents and applicable law, the unpaid balance of the Borrower's obligations under the Loan Documents, estimated as of May 14, 2024, totals at least $263,761,980.51, and includes (i) the unpaid principal amount of $225,000,000.00, (ii) interest at the non-default rate from December 15, 2023 through May 14, 2024 in the amount of $8,946,093.47, (iii) interest at the default rate from June 22, 2022 through May 14, 2024 in the amount of $27,292,422.71, (iv) late fees in the amount of $1,080,249.38, (v) exit fee in the amount of $1,125,000.00, (vi) property protection advances totaling $130,200.00, (vii) interest on advances in the amount of $350,890.66, (viii) bank account and cash management fees in the amount of $10,850.00, (ix) payoff quote/verification fee in the amount of $7,500.00, (x) special servicing fees from February 13, 2023 through May 14, 2024 in the amount of $715,625.00 and (xi) a liquidation fee in the amount of $661,647.08, less $1,558,497.79 in funds held in suspense, reserve or escrow accounts to be credited against any of the outstanding amounts due under the Loan (collectively, the "**Debt**").  The above amounts are estimates only and the full amount of the Debt shall be calculated at the appropriate stage of this case to reflect the total amount then due and owing under the Loan.

125.    Attorneys' fees and costs, due diligence report costs, title charges, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue.

126.    Interest continues to accrue at the non-default rate per annum of Term SOFR plus 0.11448% plus a spread of 3.97% (the "**Note Rate**"), and the default rate of 5.00% per annum (the "**Default Rate**").

127.    In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay charges affecting the Property.  Such sums paid by Plaintiff, together with interest thereon and any other amounts due under the Loan Documents as a result thereof, constitute part of the Debt due to Plaintiff under the Loan and Loan Documents, and, accordingly, Plaintiff requests that any such sums be added to the sums otherwise due under the Loan Documents.

128.    Each of the Defendants named herein have or claim to have some interest in, or lien upon the Property or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of Plaintiff's Mortgage sought to be foreclosed in this action.

129.    The Mechanics' Liens are junior encumbrances on the Real Property, subject and subordinate to the lien of the Mortgage.

130.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage, or for recovery of the sum evidenced by the Notes and secured by Mortgage or any part thereof.

131.    Section 9-x of New York's Banking Law is not applicable to the parties or Loan at issue in this action.

132.    All conditions precedent necessary to bring forth the claims set forth herein have been satisfied.

133.    Plaintiff requests that in the event that this action proceeds to a judgment of foreclosure and sale, the Property be sold subject to the following:

(a)    Any state of facts that an inspection of the Property would disclose;

(b)    Any state of facts that an accurate survey of the Property would show;

(c)    Covenants, restrictions, easements, and public utility agreements of record, if any;

(d)    Building and zoning ordinances or codes of the municipality, or any of its agencies or instrumentalities, in which the mortgaged Property are located and possible violations of such ordinances or codes;

(e)    Any rights of lawful tenants or persons lawfully in possession of the Property;

(f)    Any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale; and

(g)    Prior or superior lien(s) of record, if any.

## SECOND CAUSE OF ACTION
### (Full Recourse Against Guarantor)

134.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

135.    The Guaranty is a valid and enforceable contract executed by and enforceable against Guarantor in his personal capacity.

136.    The Guarantor is an owner of a direct or indirect interest in the Borrower and materially benefitted from the Lender's making of the Loan.

137.    Plaintiff is the owner and holder of the Guaranty and is entitled to enforce all of the rights and remedies set forth therein.

138.    Pursuant to Section 1.1 of the Guaranty, Guarantor is personally obligated for "the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable . . .."

139.    The term "Guaranteed Obligations" is defined in Section 1.2 of the Guaranty to include "Borrower's Recourse Liabilities" and payment of the Debt "from and after the date that any Springing Recourse Event occurs . . .."

140.    The term "Springing Recourse Event" is defined in Section 3.1(c)(G) of the Loan Agreement to include the failure by Borrower "to obtain Lender's prior written consent to any Transfer (excluding Permitted Transfers), as required by this Agreement or in the Security Instrument; . . .."

141.    Pursuant to, *inter alia*, Sections 1.4 and 1.7 of the Guaranty, Guarantor waived a broad array of defenses, counterclaims and/or offsets.

142.    By completing the Condominium Conversion without satisfying the requirements of Section 5.1.33(b) of the Loan Agreement, including obtaining the Lender's prior written consent thereto, the Condominium Conversion constitutes an impermissible Transfer under Section 5.2.10 of the Loan Agreement.

143.    Based on the Condo Conversion Default, pursuant to Section 1.1 and 1.3 of the Guaranty and Section 3.1(c)(G) of the Loan Agreement, the Guarantor is personally liable for the full amount of the Debt.

144.    Section 1.9 of the Guaranty also provides that in the event of a breach of the Guaranty, Guarantor shall, withing twelve (12) Business Days of written demand, "pay Lender all reasonable out-of-pocket costs and expenses (including court costs and reasonable out-of-pocket fees of outside counsel) incurred by Lender in the enforcement hereof or the preservation of

Lender's rights hereunder together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender."

145.    By letters dated September 27, 2022 and May 21, 2024, written demand was made upon the Guarantor for the payment of (i) the Debt and (ii) all of the Lender's costs, fees and expenses incurred in enforcing its rights under the Loan Documents, including the Guaranty.

146.    To date, Guarantor has failed and refused to satisfy his obligations to the Lender with respect to the payment of the Guaranteed Obligations due under the Guaranty, and he remains in default thereunder.

147.    To the extent that any deficiency exists after the foreclosure sale, the Guarantor is liable for the full amount of any such deficiency plus all costs of collection under the Guaranty.

**WHEREFORE**, Plaintiff respectfully requests:

(a)    that the defendants and all persons claiming under them, subsequent to the commencement of this action, be barred and foreclosed of and from all estate, right, title, interest, claim, lien, and equity of redemption of, in and to (A) the Property, as more particularly described in this Complaint, and each and every part and parcel thereof, including any personal property appurtenant thereto, (B) any and all leases, licenses, and/or occupancy agreements of any kind or nature in or to the Property or any portion thereof; that the Property may be decreed to be sold, according to law, in "as is'' physical order and condition, subject to the items set forth in paragraph 133 of this Complaint; that the monies arising from the sale thereof may be brought into Court; that Plaintiff may be paid the amount due on the Notes, Mortgage, and other Loan Documents, with interest, default interest, late charges, exit fees, and the expenses of such sale, including attorneys' fees, together with the

costs, allowances, and disbursements of this action, and together with any sums incurred by Plaintiff pursuant to any term or provision of the Notes, Mortgage, and other Loan Documents set forth in this Complaint or to protect the lien of the Mortgage, together with interest and default interest upon those sums accruing from the dates of the respective payments and advances, so far as the amount of such monies properly applicable thereto will pay the same; that the Borrower may be adjudged to pay the whole residue, or so much thereof as permitted under the Loan Documents or the Court determines to be just and equitable, of the debt remaining unsatisfied after the sale and the application of the proceeds pursuant to the directions contained in such judgment; that in the event Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Complaint but that Plaintiff shall be permitted to enforce the other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and that Plaintiff may have such other and further relief as may be just and equitable;

(b)     that, upon application therefor, this Court forthwith appoint a receiver in accordance with the provisions of the Mortgage;

(c)     in accordance with Real Property Actions and Proceedings Law § 1371, Guarantor be adjudged to pay the whole residue or so much thereof as permitted under the Guaranty and other Loan Documents, if any, or the Court determines to be just and equitable, of the debt remaining unsatisfied and deficient after a foreclosure sale of

the Property and the application of the proceeds pursuant to the directions contained in such judgment; and

(d)     such other and further relief as the Court may deem just and proper.

Dated: New York, New York       Respectfully submitted,
       May 23, 2024

**VENABLE LLP**

By:      */s/ Adam G. Possidente*
       Adam G. Possidente
       151 W. 42nd Street, 49th Floor
       New York, New York 10036
       Telephone: (212) 307-5500
       Fax: (212) 307-5598
       agpossidente@venable.com

       -and-

       Gregory A. Cross (to be admitted pro hac vice)
       Heather Deans Foley (to be admitted pro hac vice)
       750 E. Pratt Street, Suite 900
       Baltimore, Maryland 21202
       Telephone: (410) 244-7400
       Fax: (410) 244-7742
       gacross@venable.com
       hdfoley@venable.com

       *Counsel for Plaintiff*