**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF PKHL COMMERCIAL MORTGAGE TRUST 2021-MF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2021-MF, ACTING BY AND THROUGH ITS SPECIAL SERVICER, CWCAPITAL ASSET MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>88TH AVENUE OWNER LLC; 89TH AVENUE OWNER LLC; MEYER CHETRIT; APM SERVICES GROUP CORP.; LIVE LION SECURITY LLC; ADD MECHANICAL INC.; ROCK ENVIRO LLC; FNA ENGINEERING SERVICES PC; BLONDIE'S TREEHOUSE, INC.; OZ STEEL INC.; 20/20 INSPECTIONS INC.; FRONTLINE INTERNATIONAL LLC; EMPIRE PUMP & MOTOR NY LLC; ENER-CON TECHNICAL SERVICES CORP.; INTEREBAR FABRICATORS, LLC; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; and NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,<br><br>Defendants. | Civil Case No. 1:24-cv-03730 |

## ANSWER AND COUNTERCLAIMS

In response to the Complaint of Plaintiff Citibank, N.A., as Trustee on Behalf of the Holders of PKHL Commercial Mortgage Trust 2021-MF, Commercial Mortgage Pass-Through Certificates, Series 2021-MF, Acting by and Through Its Special Servicer, CWCAPITAL Asset Management LLC ("Plaintiff"), Defendants 88th Avenue Owner LLC, 89th Avenue Owner LLC and Meyer Chetrit (together, "Defendants") hereby submit their Answer and Counterclaims, as follows:

1

## ANSWERING "PARTIES"

1.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Complaint.

2.      Admit that Defendant 88th Avenue Owner LLC is a limited liability company organized under the laws of the State of Delaware and deny the remaining allegations set forth in paragraph 2 of the Complaint.

3.      Admit the allegations set forth in paragraph 3 of the Complaint.

4.      Admit the allegations set forth in paragraph 4 of the Complaint.

5.      Admit the allegations set forth in paragraph 5 of the Complaint.

6.      Deny the allegations set forth in paragraph 6 of the Complaint.

7.      Admit that Defendant 89th Avenue Owner LLC is a limited liability company organized under the laws of the State of Delaware and deny the remaining allegations set forth in paragraph 2 of the Complaint.

8.      Admit the allegations set forth in paragraph 8 of the Complaint.

9.      Admit the allegations set forth in paragraph 9 of the Complaint.

10.     Admit the allegations set forth in paragraph 10 of the Complaint.

11.     Deny the allegations set forth in paragraph 11 of the Complaint.

12.     The allegations set forth in paragraph in paragraph 12 of the Complaint are statements of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

13.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint.

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 of the Complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the Complaint.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22 of the Complaint.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Complaint.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Complaint.

26.     The allegations set forth in paragraph in paragraph 26 of the Complaint are statements of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

<u>**ANSWERING "JURISDICTION AND VENUE"**</u>

27.     The allegations set forth in paragraph 27 set forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28 of the Complaint.

29.     The allegations set forth in paragraph 29 set forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

30.     The allegations set forth in paragraph in paragraph 30 of the Complaint are statements of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

31.     The allegations set forth in paragraph in paragraph 31 of the Complaint are statements of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

32.     The allegations set forth in paragraph 32 set forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

33.     The allegations set forth in paragraph 33 set forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

34.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 34 of the Complaint.

35.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 of the Complaint.

36.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of the Complaint.

37.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37 of the Complaint.

38.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38 of the Complaint.

39.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 of the Complaint.

40.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40 of the Complaint.

41.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41 of the Complaint.

42.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 42 of the Complaint.

43.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43 of the Complaint.

44.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the Complaint.

45.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 45 of the Complaint.

46.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46 of the Complaint.

47.      The allegations set forth in paragraph 47 set forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

**ANSWERING "FACTS"**

48.      Deny the allegations set forth in paragraph 48 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

49.      Deny the allegations set forth in paragraph 49 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

50.      Deny the allegations set forth in paragraph 50 of the Complaint and refer the Notes to the Court for its true terms and conditions.

51.      Deny the allegations set forth in paragraph 51 of the Complaint and refer the Notes to the Court for its true terms and conditions.

52.      Deny the allegations set forth in paragraph 52 of the Complaint and refer the Mortgage to the Court for its true terms and conditions.

53.      Deny the allegations set forth in paragraph 53 of the Complaint and refer the Mortgage to the Court for its true terms and conditions.

54.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 54 of the Complaint.

55.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint.

56.     Deny the allegations set forth in paragraph 56 of the Complaint and refer the ALR to the Court for its true terms and conditions.

57.     Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 57 of the Complaint.

58.     Deny the allegations set forth in paragraph 58 of the Complaint and refer the ALR to the Court for its true terms and conditions.

59.     Deny the allegations set forth in paragraph 59 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

60.     Deny the allegations set forth in paragraph 60 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

61.     Deny the allegations set forth in paragraph 61 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

62.     Deny the allegations set forth in paragraph 62 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

63.     Deny the allegations set forth in paragraph 63 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

64.     Deny the allegations set forth in paragraph 64 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

65.     The allegations set forth in paragraph 65 of the Complaint are statements of law to which no response is required.  To the extent a response is required, Defendants deny the allegations.

66.    The allegations set forth in paragraph 66 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## ANSWERING "TRANSFER OF THE LOAN TO PLAINTIFF"

67.    Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 67 of the Complaint.

68.    Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 68 of the Complaint.

69.    Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 69 of the Complaint.

70.    Deny the allegations set forth in paragraph 70 of the Complaint and refer the Mortgage Assignment to the Court for its true terms and conditions.

71.    Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 71 of the Complaint.

72.    Deny the allegations set forth in paragraph 72 of the Complaint and refer the ALR Assignment to the Court for its true terms and conditions.

73.    The allegations set forth in paragraph 73 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

74.    Deny the allegations set forth in paragraph 74 of the Complaint and refer the General Assignment to the Court for its true terms and conditions.

75.     The allegations set forth in paragraph 75 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

### ANSWERING "THE BORROWER'S DEFAULTS"

76.     Deny the allegations set forth in paragraph 76 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

77.     Deny the allegations set forth in paragraph 77 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

78.     Deny the allegations set forth in paragraph 78 of the Complaint.

79.     Deny the allegations set forth in paragraph 79 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

80.     Deny the allegations set forth in paragraph 80 of the Complaint.

81.     Deny the allegations set forth in paragraph 81 of the Complaint.

82.     Deny the allegations set forth in paragraph 82 of the Complaint.

83.     Deny the allegations set forth in paragraph 83 of the Complaint.

84.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 84 of the Complaint.

85.     Deny the allegations set forth in paragraph 85 of the Complaint.

86.     Deny the allegations set forth in paragraph 86 of the Complaint.

87.     Deny the allegations set forth in paragraph 87 of the Complaint.

88.     Deny the allegations set forth in paragraph 88 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

89.     Deny the allegations set forth in paragraph 89 of the Complaint.

90.     Deny the allegations set forth in paragraph 90 of the Complaint.

91.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the Complaint.

92.     Deny the allegations set forth in paragraph 92 of the Complaint.

93.     Deny the allegations set forth in paragraph 93 of the Complaint.

94.     Deny the allegations set forth in paragraph 94 of the Complaint.

95.     Deny the allegations set forth in paragraph 95 of the Complaint.

96.     Deny the allegations set forth in paragraph 96 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

97.     Deny the allegations set forth in paragraph 97 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

98.     Deny the allegations set forth in paragraph 98 of the Complaint.

99.     Deny the allegations set forth in paragraph 99 of the Complaint.

100.     Deny the allegations set forth in paragraph 100 of the Complaint.

101.     Deny the allegations set forth in paragraph 101 of the Complaint.

102.     Deny the allegations set forth in paragraph 102 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

103.     Deny the allegations set forth in paragraph 103 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

104.     Admit that electronic mail communications occurred between the parties and deny the remainder of the allegations set forth in paragraph 104 of the Complaint.

105.     Admit that electronic mail communications occurred between the parties and deny the remainder of the allegations set forth in paragraph 105 of the Complaint.

106.    Deny the allegations set forth in paragraph 106 of the Complaint.

107.    Deny the allegations set forth in paragraph 107 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

108.    Deny the allegations set forth in paragraph 108 of the Complaint.

109.    Deny the allegations set forth in paragraph 109 of the Complaint.

110.    Deny the allegations set forth in paragraph 110 of the Complaint.

111.    Deny the allegations set forth in paragraph 111 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

112.    Deny the allegations set forth in paragraph 112 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

113.    Deny the allegations set forth in paragraph 113 of the Complaint.

114.    Deny the allegations set forth in paragraph 114 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

115.    Deny the allegations set forth in paragraph 115 of the Complaint.

116.    Deny the allegations set forth in paragraph 116 of the Complaint.

117.    Deny the allegations set forth in paragraph 117 of the Complaint.

**ANSWERING "FIRST CAUSE OF ACTION"**

118.    In response to the allegations set forth in paragraph 118 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1-117 as if fully set forth herein.

119.    Deny the allegations set forth in paragraph 119 of the Complaint.

120.    Deny the allegations set forth in paragraph 120 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

121.    Deny the allegations set forth in paragraph 121 of the Complaint and refer the Loan Agreement to the Court for its true terms and conditions.

122.    Deny the allegations set forth in paragraph 122 of the Complaint.

123.    Deny the allegations set forth in paragraph 123 of the Complaint.

124.    Deny the allegations set forth in paragraph 124 of the Complaint.

125.    Deny the allegations set forth in paragraph 125 of the Complaint.

126.    Deny the allegations set forth in paragraph 126 of the Complaint.

127.    Deny the allegations set forth in paragraph 127 of the Complaint.

128.    Deny the allegations set forth in paragraph 128 of the Complaint.

129.    Deny the allegations set forth in paragraph 129 of the Complaint.

130.    Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 130 of the Complaint.

131.    The allegations set forth in paragraph 131 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

132.    The allegations set forth in paragraph 132 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

133.    The allegations set forth in paragraph 133 of the Complaint constitute prayers for relief to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## ANSWERING "SECOND CAUSE OF ACTION"

134.    In response to the allegations set forth in paragraph 134 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1-133 as if fully set forth herein.

135.    The allegations set forth in paragraph 135 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

136.    Deny the allegations set forth in paragraph 136 of the Complaint.

137.    Deny the allegations set forth in paragraph 137 of the Complaint.

138.    Deny the allegations set forth in paragraph 138 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

139.    Deny the allegations set forth in paragraph 139 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

140.    Deny the allegations set forth in paragraph 140 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

141.    Deny the allegations set forth in paragraph 141 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

142.    Deny the allegations set forth in paragraph 142 of the Complaint.

143.    Deny the allegations set forth in paragraph 143 of the Complaint.

144.    Deny the allegations set forth in paragraph 144 of the Complaint and refer the guaranty to the Court for its true terms and conditions.

145.    Deny the allegations set forth in paragraph 145 of the Complaint.

146.    Deny the allegations set forth in paragraph 146 of the Complaint.

147.    Deny the allegations set forth in paragraph 147 of the Complaint.

148.     Deny the allegations set forth in the prayer for relief and state that Plaintiff is not entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses without assuming any burden of production or proof that they would not otherwise have:

### FIRST AFFIRMATIVE DEFENSE

149.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

150.     Plaintiff lacks standing to bring this action.

### THIRD AFFIRMATIVE DEFENSE

151.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, setoff or offset and recoupment.

### FOURTH AFFIRMATIVE DEFENSE

152.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's breach of the covenant of good faith and fair dealing.

### FIFTH AFFIRMATIVE DEFENSE

153.     Plaintiff's claims are barred by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

154.     Plaintiff's claims are barred because any injury allegedly suffered by Plaintiff was caused, and any damages to which it alleges it is entitled are diminished by, its own culpable conduct.

## SEVENTH AFFIRMATIVE DEFENSE

155.    Plaintiff's claims are barred because its alleged injuries were not proximately caused by any act or omission of Defendant.

## EIGHTH AFFIRMATIVE DEFENSE

156.    Plaintiff's claims are barred because it failed to mitigate its damages.

## NINTH AFFIRMATIVE DEFENSE

157.    Plaintiff's claims are barred based on economic duress.

## TENTH AFFIRMATIVE DEFENSE

158.    Plaintiff's claims are barred by the impossibility of performance.

## ELEVENTH AFFIRMATIVE DEFENSE

159.    Plaintiff's claims are barred by the doctrine of frustration of purpose.

## TWELFTH AFFIRMATIVE DEFENSE

160.    Plaintiff's claims are barred because the contract damages claimed are duplicative, and recovery on these claims would permit an impermissible double recovery.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend this Answer, to add additional defenses, to withdraw defenses, and to add claims or assert additional crossclaims.

## COUNTERCLAIMS

161.     Defendants/Counterclaim Plaintiffs 88th Avenue Owner LLC and 89th Avenue Owner LLC ("Counterclaim Plaintiffs") allege the following counterclaims against Plaintiff/Counterclaim Defendant Citibank, N.A., as Trustee on Behalf of the Holders of PKHL Commercial Mortgage Trust 2021-MF, Commercial Mortgage Pass-Through Certificates, Series 2021-MF, Acting by and Through Its Special Servicer, CWCAPITAL Asset Management LLC ("Counterclaim Defendant").

## NATURE OF THE ACTION

162.     These Counterclaims arise from a lender's predatory actions in luring Counterclaim Plaintiffs to expend millions of dollars of its own funds in construction costs – and procuring and closing on a construction loan in the amount of $40 million – only to then engage in a game of "gotcha," failing to release an adjoining parcel of land to manufacture a $225 million default, plus the loss of (a) over $60 million of Counterclaim Plaintiffs' capital investment and (b) millions of dollars in tax benefits.

163.     Counterclaim Plaintiffs – whose principal Joseph Chetrit is an experienced real estate developer for over 40 years, who has developed millions square feet of real estate across the United States – seeks redress from this Court to correct these grievous wrongs.

164.     As described more fully below, this action arises from a development project in connection with several properties in Jamaica, Queens, located at the following addresses: 152-13 88th Avenue a/k/a 152-11 89th Avenue, Jamaica, New York, and 152-09 88th Avenue, Jamaica, New York (commonly known as Parkhill City) and 88-20 153rd Street, Jamaica, New York (the "Project").

165.     In connection with the Project, on or about June 30, 2021, Counterclaim Plaintiffs

and one of Counterclaim Defendant's predecessors-in-interest Starwood Mortgage Capital LLC and Bank of Montreal (the "Original Lender") closed on a loan in the principal amount of $225,000,000.00 (the "Loan") memorialized in a loan agreement dated June 30, 2021 (the "Loan Agreement") with an interest rate of 4.22% per annum.

166.    An integral purpose of the Project was that an adjoining parcel of land located at 88-20 153rd Street, Jamaica, New York (the "153rd Street Property") was eligible as-of-right to receive significant tax benefits if it were permitted to be constructed as a senior-living property. Specifically, the development of the 153rd Street Property would save the Project $2 million annually, as well as retroactively save Counterclaim Plaintiffs approximately $8 million in tax benefits under the Section 421-A tax exemption for affordable housing in New York State.

167.    The 153rd Street Property is encumbered by a lien of the Mortgage in connection with the Loan.  However, under Section 2.5.2 of the Loan Agreement, Counterclaim Defendant was required to release that lien if Counterclaim Plaintiffs fulfilled certain conditions, which was supposed to be minimal to ensure the financial stability of the Project.

168.    In preparation for developing the 153rd Street Property, Counterclaim Plaintiffs – with the knowledge of the Original Lender – closed on a $40,000,000 construction loan with G-4 Capital Partners on June 29, 2021.

169.    Specifically, in numerous conversations during the month of June 2021, the Original Lender – through its Vice Presidents Steve Barlett and Joe Duarte – made a clear and unambiguous promise that Counterclaim Plaintiffs were permitted to commence construction at the 153rd Street Property.

170.    Thereafter, in December 2021, with the knowledge and consent of the Original Lender, Counterclaim Plaintiffs commenced construction of the 153rd Street Property, which also

included Counterclaim Plaintiffs' expenditure of approximately $8 million of its own funds for excavation, foundation and the building of a partial superstructure.

171. In the following months, Counterclaim Plaintiffs complied with the requirements of Section 2.5.2 of the Loan Agreement in order to effectuate the release of the lien encumbering the 153rd Street Property.

172. Moreover, pursuant to Section 5.1.33 of the Loan Agreement, Counterclaim Plaintiffs had the right to convert the properties in connection with the Project to a condominium form of ownership.  On or about June 22, 2022, Counterclaim Plaintiffs completed this requirement.

173. Sometime in July 2022, the Original Lender purportedly assigned its interest in the Loan to Counterclaim Defendant.

174. Thereafter, Counterclaim Defendant, through its servicer Midland Loan Services of PNC Bank ("Midland"),[1] engaged in months of discussions whereby it added new purported conditions for Counterclaim Plaintiffs to fulfill to release the lien encumbering the 153rd Street Property that were not included in the Loan Agreement, including payment of its exorbitant legal fees in the amount of $175,000.00.

175. Specifically, in an email dated July 29, 2022, Midland requested Counterclaim Plaintiffs to pay a $50,000 "legal fee retainer" for condominium conversion/release of the 153rd Street Property, a $25,000 non-refundable "processing fee" and a $100,000 fee in "lieu of default interest."

176. In short, Midland's request for these exorbitant fees was made in bad faith to ensure that release of the 153rd Street Property would be impossible and create irreparable damage to the

---

[1] At some point thereafter, CWCapital Asset Management LLC ("CWCapital") became Plaintiff's servicer.

Project and Counterclaim Plaintiffs.

177.    Adding insult to injury, Counterclaim Defendant created a checklist of *42 items* to release the 153rd Street Property, many of which are not required by the Loan Agreement.

178.    Further evidencing Midland's intention to manufacture a default, as of mid-October 2022, Midland claimed certain items were missing from Counterclaim Plaintiffs (such as an updated survey), which was false and provided by Counterclaim Plaintiffs.  Again, several of the "missing" items were not required to be provided by the Loan Agreement.

179.    In fact, all required materials were submitted to Midland by September 30, 2022.

180.    During this months-long process, Counterclaim Defendant never objected to Counterclaim Plaintiffs' commencement of construction at the 153rd Street Property, since December 2021.

181.    In light of the Original Lender's assurances and Counterclaim Plaintiffs' partial performance, Counterclaim Plaintiff is equitably estopped from enforcing any provision in the Loan Agreement concerning construction work at the 153rd Street Property.

182.    Despite Counterclaim Plaintiffs fulfilling all necessary items for release of the lien encumbering the 153rd Street Property, Counterclaim Defendant failed to comply with its obligations under the Loan Agreement by refusing to release the lien and causing irreparable damage to Counterclaim Plaintiffs.

183.    Indeed, Counterclaim Defendant's own actions demonstrate that its failure to release the 153rd Street Property was made in bad faith.  During October 2023, Counterclaim Plaintiffs and Counterclaim Defendant's representative had discussions concerning modifying the Loan.  During those discussions, Counterclaim Defendant's representative – in a sudden about face – made clear that it was willing to release the lien encumbering the 153rd Street Property

without any of the prior items that were "missing" if Counterclaim Plaintiffs made yet another capital investment of almost $7 million.

184.    Counterclaim Defendant's breach of contract directly and proximately caused Counterclaim Plaintiff damages in losing the Section 421-A tax exemption benefits totaling approximately tens of millions of dollars, including $60 million of Counterclaim Plaintiffs' capital investment and caused the Project to be sabotaged.

185.    Specifically, had the 153rd Street Property been developed by the end of 2022, with the increase of the Project's net operating income, the Project would have been eligible to receive a new stabilized loan with an interest rate as low as 4.8% per annum.

186.    Currently, the Loan Agreement carries an interest rate of over ten percent per annum.

187.    Had the 153rd Street Property been developed by the end of 2022, the Project would have been operating at a profit of $13 million to $14 million annually (including the tax benefits set forth above).

### AS AND FOR A FIRST COUNTERCLAIM
**(Breach of the Loan Agreement)**

188.    The above paragraphs are incorporated by reference as if fully set forth herein.

189.    As set forth above, on or about June 30, 2021, Counterclaim Plaintiffs and Counterclaim Defendant's predecessor-in-interest entered into a written, binding agreement, the Loan Agreement.

190.    Pursuant to Section 2.5.2 of the Loan Agreement, Counterclaim Defendant is obligated to release the lien encumbering the 153rd Street Property.

191.    Counterclaim Plaintiffs performed their obligations under the Loan Agreement, including everything necessary to obtain the release of the 153rd Street Property and with the

approval of the Original Lender.

192.    In breach of the Loan Agreement, Counterclaim Defendant failed to release the 153rd Street Property and added conditions to such release that were not required by the Loan Agreement.

193.    As a direct and proximate result of Counterclaim Defendant's breach of contract, Counterclaim Plaintiffs are entitled to an award of damages in an amount to be determined at trial, but no less than $250,000,000 concerning loss of its capital investment, loss of the tax benefits set forth above, and the imputed value of the Project set forth above, plus statutory interest and reasonable attorneys' fees.

<u>AS AND FOR A SECOND COUNTERCLAIM</u>
**(Promissory Estoppel)**

194.    The above paragraphs are incorporated by reference as if fully set forth herein.

195.    Pleading in the alternative, on or about June 2021, the Original Lender made a clear and unambiguous promise that Counterclaim Plaintiffs were permitted to commence construction at the 153rd Street Property.

196.    It was reasonably foreseeable that Counterclaim Plaintiffs could rely on this unequivocal assurance in light of their ongoing business relationship spanning 15 years in the real estate industry and many hundreds of millions of dollars of loans.

197.    Counterclaim Plaintiffs actually relied on the Original Lender's verbal representations by, among other things, (a) expending $8 million of its own funds on construction costs, (b) procuring and obtaining a $40 million construction loan, and (c) making payments in accordance with the Loan Agreement.

198.    By virtue of its position in this action and other correspondence, Counterclaim Defendant, as the purported successor-in-interest to the Original Lender, refused to honor its

promise and caused damage to Counterclaim Plaintiffs in the amount of hundreds of millions of dollars.

199.    Counterclaim Plaintiffs have suffered and will continue to suffer unconscionable injury absent enforcement of Counterclaim Defendant's unequivocal promise that Counterclaim Plaintiffs were permitted to commence construction at the 153rd Street Property, including but not limited to declaring a purported "event of default" under the Loan Agreement and filing this action seeking foreclosure of the properties in connection with the Project.

200.    As a direct and proximate result of Counterclaim Plaintiffs' reasonable, foreseeable, and justifiable reliance on Counterclaim Defendant's promise, Counterclaim Plaintiffs have incurred hundreds of millions of dollars in damages, the exact amount of which will be determined at trial.

**AS AND FOR A THIRD COUNTERCLAIM**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

201.    The above paragraphs are incorporated by reference as if fully set forth herein.

202.    Under New York law, all contracts – including the Loan Agreement – imply a covenant of good faith and fair dealing in the course of performance.

203.    This covenant constitutes a duty that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of a contract.

204.    Counterclaim Defendant breached this duty by, as set forth in detail above, insisting on adding conditions that were not a part of the Loan Agreement to effectuate the release of the lien encumbering the 153rd Street Property.

205.    Indeed, when negotiating a loan modification in October 2023, Counterclaim Defendant indicated that it would release the 153rd Street Property without any of the items that it claimed were missing.

206.    Counterclaim Defendant's actions had the effect of destroying Counterclaim Plaintiffs' contractual right to develop and obtain the tax benefits associated with the 153rd Street Property.

207.    As a direct and proximate result of Counterclaim Defendant's breach of the duty of good faith and fair dealing, Counterclaim Plaintiffs have incurred hundreds of millions of dollars in damages, the exact amount of which will be determined at trial.

**WHEREFORE,** Defendants/Counterclaim Plaintiffs pray that the Court: (i) dismiss the Complaint in its entirety with prejudice, (ii) grant Defendants an award of attorneys' fees, costs and disbursements, (iii) grant judgment in favor of Counterclaim Plaintiffs and against Plaintiff/Counterclaim Defendant in an amount to be determined, but no less than $250,000,000, plus statutory interest and attorneys' fees, and (iv) grant such other and further relief that the Court deems just and proper.

Dated: New York, New York
        August 1, 2024

                                **JACOBS P.C.**

                                /s/ Adam Sherman
                                Adam Sherman, Esq.
                                595 Madison Avenue
                                39th Floor
                                New York, New York 10022
                                Tel: (212) 229-0476
                                adam@jacobspc.com
                                *Attorneys for*
                                *Defendants/Counterclaim*
                                *Plaintiffs 88th Avenue Owner*
                                *LLC, 89th Avenue Owner LLC*
                                *and Meyer Chetrit*