UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF PKHL COMMERCIAL MORTGAGE TRUST 2021-MF, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2021-MF, ACTING BY AND THROUGH ITS SPECIAL SERVICER, CWCAPITAL ASSET MANAGEMENT LLC<br><br>                              Plaintiff,<br><br>                   v.<br><br>88TH AVENUE OWNER LLC; 89TH AVENUE OWNER LLC; MEYER CHETRIT; APM SERVICES GROUP CORP.; LIVE LION SECURITY LLC; ADD MECHANICAL INC.; ROCK ENVIRO LLC; FNA ENGINEERING SERVICES PC; BLONDIE'S TREEHOUSE, INC.; OZ STEEL INC.; 20/20 INSPECTIONS INC.; FRONTLINE INTERNATIONAL LLC; EMPIRE PUMP & MOTOR NY LLC; ENER-CON TECHNICAL SERVICES CORP.; INTEREBAR FABRICATORS, LLC; THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD; and NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,<br><br>                              Defendant. | **MEMORANDUM AND ORDER**<br><br>24-CV-03730 |

LaSHANN DeARCY HALL, United States District Judge:

Citibank, N.A., as Trustee on behalf of the Holders of PKHL Commercial Mortgage Trust 2021-MF, Commercial Mortgage Pass-Through Certificates, Series 2021-MF ("Plaintiff" or "Lender") brings this action against 88th Avenue Owner LLC and 89th Avenue Owner LLC (together, the "Borrowers"), as well as Meyer Chetrit (the "Guarantor") (collectively, "Borrower

Defendants"), along with several other defendants,[1] asserting claims for the foreclosure of a mortgage and claims for full recourse against a guarantor. Borrower Defendants bring counterclaims for breach of the loan agreement, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. Plaintiff moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Borrower Defendants' counterclaims.

## BACKGROUND[2]

### I. Facts Alleged in the Underlying Complaint

On June 30, 2021, Starwood Mortgage Capital LLC and Bank of Montreal (together, the "Original Lender") made a loan to the Borrowers for $225 million pursuant to terms of a loan agreement governed by New York Law (the "Loan Agreement"), as well as a Consolidated, Amended, and Restated Mortgage and Security Agreement (the "Mortgage"). (Compl. ¶¶ 48-52, 66, ECF No. 1.) The Mortgage granted a security interest in real property located in Jamaica, Queens at 152-01 88th Avenue, 150-13 89th Avenue, 152-09 88th Avenue, and 88-20 153rd Street (the "Release Parcel") (together, the "Property"). (*Id*. ¶¶ 2, 48, 52.) On July 15, 2022, the Original Lender assigned its interest in the Mortgage to Plaintiff, which was to be effective as of July 29, 2021. (*Id.* ¶ 69.)

Pursuant to Section 8.1(a) of the Loan Agreement, an event of default occurs if "Borrower[s] breach[] any of [their] respective covenants contained in Section 5.2 [of the Loan Agreement]," (Loan Agreement, Ex. 1, § 8.1(a)(x), ECF No. 1-1.), or "Borrowers . . . continue

---

[1] Plaintiff also brings claims against 20/20 Inspections Inc., ADD Mechanical Inc., APM Services Group Corp., Blondie's Treehouse, Inc., Empire Pump & Motor NY LLC, Ener-Con Technical Services Corp., FNA Engineering Services PC, Frontline International LLC, Interebar Fabricators, LLC, Live Lion Security LLC, New York State Department of Taxation and Finance, Oz Steel Inc., Rock Enviro LLC, and The City of New York Environmental Control Board. However, these Defendants are party to neither the Borrower Defendants' counterclaims nor Plaintiff's motion to dismiss.

[2] The facts in Plaintiff's underlying complaint, as well as Borrower Defendants' answer and counterclaims, are assumed to be true for purposes of deciding the instant motion.

to be in [d]efault under any of the other terms, covenants or conditions of this [Loan] Agreement . . . for ten (10) days after notice to Borrowers[] from Lender, in the case of any [d]efault that can be cured by the payment of a sum of money, or for thirty (30) days after notice from the Lender in the case of any other [d]efault, (*Id.* § 8.1(a)(xxvii); Compl. ¶ 76.) And, of particular relevance here, pursuant to Section 5.2.16(a) of the Loan Agreement, the Borrowers were prohibited from commencing work on the Release Parcel until the completion of the Condo Conversion and the release of the Release Parcel (the "Property Release") in accordance with Section 2.5.2 of the Loan Agreement. (Compl. ¶ 80; Loan Agreement § 5.2.16(a).)

In December 2021, the Borrowers commenced work on the Release Parcel without completing the Condo Conversion, which triggered an event of default under Section 8.1(a)(x) of the Loan Agreement. (Compl. ¶¶ 76, 81-82; *see* Loan Agreement § 8.1(a)(x).) The Borrowers completed the Condo Conversion on June 22, 2022. (Compl. ¶¶ 79, 142.) Plaintiff notified the Guarantor of the events of default on September 27, 2022, and informed him that his full recourse liability had been triggered under Section 3.1(c)(G) of the Loan Agreement. (*Id.* ¶ 83.) On May 16, 2024, Plaintiff notified Borrower Defendants of each default, including, *inter alia*, Borrower Defendants' default under Section 8.1(a(x) of the Loan Agreement. (*Id.* ¶ 116.) The instant complaint was filed on May 23, 2024. (*See id.*)

## II. Facts Alleged in Borrower Defendants' Answer and Counterclaims

On August 1, 2024, Borrower Defendants filed counterclaims against Plaintiff for (1) breach of contract, (2) promissory estoppel, and (3) breach of the implied covenant of good faith and fair dealing. (Defs.' Answer and Counterclaims ("Defs.' Counterclaims") ¶¶ 188-207, ECF No. 64.)

The Release Parcel is encumbered by a lien of the Mortgage in connection with the Loan. (*Id.* ¶ 167; *see* Loan Agreement § 2.5.2.) Pursuant to Section 2.5.2 of the Loan Agreement, Borrower Defendants are required to satisfy certain conditions, including, *inter alia*, not defaulting, to effectuate the release of the lien encumbering the Release Parcel. (Loan Agreement § 2.5.2.) According to the counterclaims, the Original Lender made an oral promise to Borrower Defendants, permitting them to commence construction on the Release Parcel prior to the completion of the Condo Conversion. (*See* Defs.' Counterclaims ¶¶ 169, 172.) Thereafter, on June 29, 2021, Borrower Defendants closed on a $40 million construction loan to develop the Release Parcel. (*Id.* ¶ 168.) Relying on the Original Lender's promise, Borrower Defendants commenced construction on the Release Parcel in December 2021. (*Id.* ¶ 170.) Borrower Defendants subsequently completed the requirements necessary to effectuate the release of the lien encumbering the Release Parcel, including the Condo Conversion, which Borrower Defendants completed in June 2022. (*Id.* ¶¶ 171-72.)

In July 2022, the Original Lender assigned its interest in the Loan Agreement and Mortgage to Plaintiff. (*Id.* ¶ 173.) Borrower Defendant allege that, thereafter, Plaintiff, through its servicer Midland Loan Services of PNC Bank ("Midland"), purported to add new requirements for the Property Release, including a requirement to pay a "legal fee retainer," a "non-refundable 'processing fee,'" and a "fee in lieu of default interest." (*Id.* ¶¶ 174-75.) Borrower Defendants allege that these conditions were added to prevent the Borrowers from securing the release of the lien encumbering the Release Parcel and manufacture a default. (*Id.* ¶¶ 176-78.) By September 2022, Borrower Defendants had submitted all required materials to Plaintiff for the release of the Release Parcel. (*Id.* ¶ 179.) Borrower Defendants allege that Plaintiff nonetheless failed to release the lien encumbering the Release Parcel. (*Id.* 182.)

4

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* (quoting *Twombly*, 550 U.S. at 556). While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint [and counterclaim] as true." *Id.* (internal citations omitted).

**DISCUSSION**

**I.    Breach of Contract Counterclaim**

Under New York law, "[t]o make out a viable claim for breach of contract[,] a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996)). A court may dismiss a breach of contract counterclaim at the motion to dismiss stage "only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). Accordingly, when determining whether dismissal is appropriate, a

5

court must ask, as an initial question, "whether the contract is unambiguous with respect to the question disputed by the parties." I*nt'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). Ambiguity is a matter of law and determined by looking "within the four corners of the document, not outside sources." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165 (2d Cir. 2024) (citations omitted). "[A] contract is ambiguous if its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir.2010)). Conversely, contractual terms are unambiguous if they have "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (internal quotation marks omitted) (quoting *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355 (1978)). "Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, and [t]he words and phrases used by the parties must . . . be given their plain meaning." *Flynn C*, 120 F.4th at 1165 (alterations in original) (internal quotation marks omitted) (quoting *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014)). And, "'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Hylan Ross, LLC v. 2582 Hylan Boulevard Fitness Grp., LLC*, 206 A.D.3d 893, 894 (N.Y. App. Dev. 2022) (citation omitted).

Borrower Defendants argue that Plaintiff effectively breached the Loan Agreement by "refusing to release the lien" encumbering the Release Parcel, despite Borrower Defendants' performance of all obligations under the Loan Agreement. (Defs.' Counterclaims ¶¶ 182, 191-92.) Plaintiff, on the other hand, argues that Borrower Defendants' counterclaim for breach of contract should be dismissed because the Loan Agreement unambiguously entitles Plaintiff to prevent release of the Release Parcel when, as alleged here, there is a default or event of default. (Pl.'s Mem. Supp. Mot. to Dismiss ("Pl.'s Mem."), at 4-5, ECF No. 85-4.) Notably, Borrower Defendants fail to respond to this argument. And, as such, Borrower Defendants concede its validity. *See Nunez v. Cuomo*, No. 11-CV-3457, 2012 WL 3241260, at *19 (E.D.N.Y. Aug. 7, 2012) ("Plaintiffs appear to concede Defendants' arguments, as they fail to acknowledge or contest them"); *Dolce v. Connetquot Cent. Sch. Dist.*, No. 24-CV-00622, 2025 WL 1070079, at *7 (E.D.N.Y. Apr. 9, 2025) (holding that, by "failing to respond to [an] argument" in opposition to defendants' motion to dismiss, plaintiffs "abandoned" their claim); *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue" (citation omitted)), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022). In any event, the Court agrees with Plaintiff.

The Loan Agreement states, in relevant part, that:

[The] Borrower[s] may obtain the release (the "Property Release") of the entirety of the Release Parcel owned by it from the [l]ien of the Mortgage encumbering such Release Parcel (and related [l]oan [d]ocuments) thereon, provided . . . [b]oth immediately before such Property Release and immediately thereafter, no [d]efault or [e]vent of [d]efault shall be continuing.

(Loan Agreement § 2.5.2(a) (emphasis omitted).) Further, pursuant to Section 8.1 of the Loan Agreement, an event of default occurs when the "Borrower[s] breach[] any of [their]

7

respective covenants contained in Section 5.2 [of the Loan Agreement]." (Loan Agreement § 8.1(a)(x).) And, Section 5.2 of the Loan Agreement states that the "Borrower[s] shall not commence any work . . . [or] permit any work to commence at the Release Parcel until the Condominium Conversion occurs and the parcel is released in accordance with Section 2.5.2 [t]hereof." (Loan Agreement § 5.2.16(a).) Each of these provisions is unambiguous on its face. As such, the provisions are given their plain meaning. *See Flynn*, 120 F.4th at 1165 (2d Cir. 2024). Together, the provisions plainly state that commencement of work at the Release Parcel, prior to the completion of the Condo Conversion, constitutes an event of default, preventing the release of the Release Parcel. (*See* Loan Agreement §§ 2.5.2(a), 5.2.16(a), 8.1(a)(x).)

Here, Borrower Defendants commenced construction on the Release Parcel in December 2021—six months before the Condo Conversion was completed in June 2022. (Defs.' Counterclaims ¶¶ 170, 171-72.) This breach constituted an event of default, which, per the Loan Agreement, entitled Plaintiff to refuse the Property Release. (Loan Agreement §§ 2.5.2(a), 8.1(a)(x).) Accordingly, Plaintiff was not in breach when it failed to release the lien encumbering the Release Parcel. Borrower Defendants cannot therefore sustain a claim for breach of contract. *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177 ("To make out a viable claim for breach of contract a complaint need . . . allege . . . breach of contract by the defendant." (internal quotation marks omitted)).

To avoid this conclusion, Borrower Defendants allege that the Original Lender "made a clear and unambiguous promise that [they] were permitted to commence construction at the Release Parcel." (Defs.' Counterclaims ¶ 169.) Further, Borrower Defendants allege that, with the knowledge and consent of the Original Lender, they commenced construction at the Release

8

Parcel prior to completing the Condo Conversion. (*See* Defs.' Counterclaims ¶¶ 170, 172.) Even taken as true, these allegations cannot save Borrower Defendants' claim.

Where an alleged oral promise directly contradicts a written contract, a "[party] may not seek to vary the unambiguous terms of the written contract with evidence of a contemporaneous oral [promise]." *DePasquale v. Est. of DePasquale*, 44 A.D.3d 606, 607 (N.Y. App. Dev. 2007); s*ee also Investors Insurance Co. of America v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990) (finding that the parole evidence rule precludes the introduction of "extrinsic evidence . . . to vary the plain meaning of the [terms of a written contract]").

Here, again, the written terms of the Loan Agreement are unambiguous: The Loan Agreement reads, in relevant part, that "[n]o modification . . . or waiver of any provision of th[e] Agreement, . . . nor consent to any departure by Borrower[s] therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought." (Loan Agreement § 10.4.) That is, by its plain meaning, Section 10.4 prohibits the enforcement of any oral modification or waiver. (*See* Loan Agreement § 10.4.) Moreover, to effectuate the Property Release, Borrower Defendants were required to complete the Condo Conversion prior to commencing work on the Release Parcel. (Loan Agreement § 5.2.16.) Plainly, the Original Lender's oral promise to Borrower Defendants, permitting commencement of work on the Release Parcel prior to the completion of the Condo Conversion, contradicts these terms. Borrower Defendants may not "vary" the unambiguous terms of the Loan Agreement by those of the oral promise. *DePasquale*, 44 A.D.3d at 607. The oral promise is thus unenforceable. *Cf. TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016) ("[W]here contract language is clear and unambiguous, courts will enforce an agreement according to its terms, without looking outside the four corners of the document").

9

Plaintiff further argues that, because the Loan Agreement contains an integration clause that bars consideration and enforcement of prior oral statements, like the oral promise here, Borrower Defendants' counterclaim for breach of contract should be dismissed. (Pl.'s Mem. at 5.) Borrower Defendants, again, fail to address Plaintiff's argument, yielding the argument. *See Nunez*, No. 11-CV-3457 DLI LB, 2012 WL 3241260, at *19; *Dolce*, No. 24-CV-00622 (HG), 2025 WL 1070079, at *7; *BYD Co. Ltd.*, 531 F. Supp. 3d at 821. The Court, nevertheless, agrees with Plaintiff.

Per Section 10.22, the Loan Agreement "contain[s] the entire agreement . . . and all prior agreements among such parties, whether oral or written, . . . are superseded." (Loan Agreement § 10.22.) Where an agreement contains an integration clause and a no-oral modification clause, a court should not rely on extrinsic evidence, such as an oral promise, when interpreting the language of the agreement. *Vision Dev. Grp. of Broward Cnty., LLC v. Chelsey Funding, LLC*, 43 A.D.3d 373, 374 (2007). Notably, when a written agreement is facially unambiguous, complete, and contains only an integration clause, the parole evidence rule bars the enforcement of an oral promise. *See DDCLAB Ltd. v. E.I. DuPont De Nemours & Co.*, No. 03 CV 3654GBD, 2005 WL 425495, at *3 (S.D.N.Y. Feb. 18, 2005) ("[W]here the written agreement is 'clear and complete on its face' and it 'lucidly manifests the parties' intent' that the contract super[s]edes prior oral promises and constitutes the parties' entire agreement, 'the parol[e] evidence rule effectively bars any action to enforce the oral agreement.'"). As discussed, here, the written agreement is complete and unambiguous. In addition, the Loan Agreement contains both an integration clause (Section 10.22), which states that "all prior agreements among such parties, whether oral or written, . . . are superseded,"

10

(Loan Agreement § 10.22), as well as a clause prohibiting oral modifications (Section 10.4). As such, the oral promise is unenforceable.

Plaintiff contends that, in addition to the terms of the Loan Agreement, the Original Lender's oral promise is unenforceable under the Statute of Frauds. (Pl.'s Mem. at 6.) Despite failing to address any of Plaintiff's other arguments, Borrower Defendants endeavor to rebut this argument by arguing the applicability of two exceptions to the Statute of Frauds—(1) part performance and (2) equitable estoppel. (Defs.' Mem. Opp'n Mot. to Dismiss ("Defs.' Opp'n"), at 3-6, ECF No. 90.) The Court is unpersuaded. Even assuming that Borrower Defendants allege facts sufficient to plead either exception, under New York law, where an agreement contains a clause prohibiting oral modification and a broad integration clause, any claim premised solely on a verbal promise is barred as a matter of law. *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 9 (2012). Here, Borrower Defendants' breach-of-contract claim is fundamentally premised on the Original Lender's oral promise, not the written agreement. Therefore, the inquiry ends here.

Borrower Defendants' claim for breach of contract is dismissed accordingly.

## II. Promissory Estoppel Counterclaim

In the alternative, Borrower Defendants argue that, in reliance on the Original Lender's verbal representation, they procured a $40 million loan and expended $8 million of their own funds, and as a result, Plaintiff is liable for failing to effectuate the Property Release under the doctrine of promissory estoppel. (Defs.' Opp'n. at 8.) The Court is, ultimately, unconvinced.

For a party to state a successful promissory estoppel claim, they must allege "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promise, and (3) unconscionable injury to the relying party as a result of the reliance." *Readco, R.D.P. v. Marine*

11

*Midland Bank,* 81 F.3d 295, 301 (2d Cir. 1996) (citations omitted). Under New York law, "claims in quasi-contract such as . . . promissory estoppel are ordinarily precluded if a 'valid and enforceable written contract[]' . . . governs the relevant 'subject matter.'" *Goldberg v. Pace Univ.*, 88 F.4th 204, 214 (2d Cir. 2023) (alterations accepted) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006)). Thus, promissory estoppel applies in instances where no written contract exists, or a written contract is unenforceable. *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023) (citation omitted); *see also Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 993 (S.D.N.Y. 1989) ("[A]pplying promissory estoppel to create contractual obligations where a comprehensive contract exists would contravene the fundamental rules that extrinsic evidence cannot be used to vary the unambiguous terms of a contract."). Moreover, where the terms of an enforceable and unambiguous written contract are inconsistent with the alleged verbal representations that form the basis of a promissory estoppel claim, a claimant cannot have reasonably relied on those representations and, therefore, cannot recover under the doctrine of promissory estoppel as a matter of law. *See Frio Energy Partners, LLC*, 680 F. Supp. 3d at 343 ("If terms of an unambiguous contract are inconsistent with the statements that form the basis of the claim, the claiming party could not have reasonably relied on those statements as a matter of law." (quoting *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 CIV. 0432 (LAP), 2008 WL 650403, at *11 (S.D.N.Y. Mar. 7, 2008))).

As an initial matter, Plaintiff argues that Borrower Defendants' claim for promissory estoppel is precluded by the existence of an enforceable and unambiguous agreement. (Pl.'s Mem. at 7-8.) The Court agrees. As discussed above, here, there exists an enforceable and unambiguous agreement that addresses the subject matter of the Property Release. (*Supra*

12

Section I; Loan Agreement.)  That is, here, the Loan Agreement provides a framework and conditions for the Property Release, (*See* Loan Agreement § 2.5.2), and the commencement of work on the Release Parcel, (*See* Loan Agreement § 5.2.16).  This, alone, is reason enough to preclude Borrower Defendants' promissory estoppel claim.[3]  *See Goldberg*, 88 F.4th at 214.

Accordingly, Borrower Defendants' claim for promissory estoppel is dismissed.

### III. Breach of Implied Covenant of Good Faith and Fair Dealing Counterclaim

"Under New York law, a duty of good faith and fair dealing is implicit in every contract, but only in connection with rights or obligations originating in the contract." *Wolff v. Rare Medium, Inc.*, 65 F. App'x 736, 738–39 (2d Cir. 2003) (first citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992); and then *Chemical Bank v. Stahl*, 272 A.D.2d 1, 712 N.Y.S.2d 452, 462 (1st Dept.2000)).  A breach of the implied covenant of good faith and fair dealing is "merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (*Fasolino*, 961 F.2d at 1056); *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011) (citation omitted).  For a party to state a cause of action for a breach of an implied covenant of good faith and fair dealing, they must allege facts tending to show that the other party "sought to prevent performance of the contract or to withhold its benefits from the complaining party." *Yanez Osuna v. Citigroup Inc.*, No. 19-

---

[3] Even assuming that, despite the written contract here, Borrower Defendants' claim for promissory estoppel could lie, Plaintiff is correct that Borrower Defendants' reliance is unreasonable. (*See* Pl.'s Mem. at 8.)  Indeed, the very thing that Borrower Defendants rely upon in support of their claim for promissory estoppel—an oral promise—is unambiguously and expressly prohibited by Sections 10.22 and 10.4 of the Loan Agreement. (*Supra* Section I; *see* Loan Agreement §§ 10.22, 10.4.)  As such, Borrower Defendants' promissory estoppel claim also fails on this ground.  *See Readco, R.D.P.,* 81 F.3d at 301 (holding that a successful promissory estoppel claim requires, *inter alia*, "reasonable and foreseeable reliance" (citation omitted)).  Borrower Defendants' argument that a determination as to reasonable reliance is inappropriate for the motion-to-dismiss stage does not alter the Court's view.  *See Frio Energy Partners, LLC*, 680 F. Supp. 3d at 343; *Ixe Banco, S.A.*, 2008 WL 650403, at *11; *DDCLAB Ltd.*, No. 03 CV 3654GBD, 2005 WL 425495, at *6 (S.D.N.Y. Feb. 18, 2005) (finding, on a motion to dismiss, that, "[g]iven the unambiguous integration clause in the parties'[agreement]," the plaintiff could not "justifiably rely on [the defendant's] oral promises made after the [agreement] was executed").

3110-CV, 2020 WL 3989084, at *42 (2d Cir. July 15, 2020) (quoting *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 514 (2d Dep't 1999)). However, under New York law, a cause of action to recover damages for breach of the implied covenant cannot be maintained where it is duplicative of a breach of contract claim. *See Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (concluding that a plaintiff's "claim for breach of the implied covenant was properly dismissed" when found to be duplicative of its breach of contract claim). A claim for breach of the implied covenant of good faith and fair dealing is duplicative when it is based on the same facts and seek identical damages for the same resulting injury as a breach of contract claim. *See Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 278-79 (2d Cir. 2018) (dismissing a plaintiff's claim for breach of contract where it sought "redress for the same conduct and resulting injury as the breach of contract claim"); *Deutsche Bank Nat. Tr. Co.*, 810 F.3d at 869 ("Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" (citation omitted)); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (same). A claim for violation of the duty of good faith and fair dealing survives dismissal only "if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). According to Plaintiff, such is not the case here. (Pl's Mot. Dismiss at 8-9.) The Court agrees.

With respect to their claim for breach of implied covenant of good faith and fair dealing, Borrower Defendants allege that, after the Original Lender had purportedly assigned its interest in the Loan to Plaintiff, Plaintiff purportedly added new conditions for the Property Release, including the payment of a $50,000 "legal fee retainer"; $25,000 "processing fee"; and $100,000

14

"fee in 'lie of default.'" (Defs.' Counterclaims ¶¶ 173-75.) In addition, according to Borrower Defendants, Plaintiff created a checklist of 42 items required for the Property Release, some of which were not required by the Loan Agreement. (*Id.* ¶¶ 177-78.) Borrower Defendants further allege that, despite submitting all required materials by September 2022, Plaintiff deemed certain requirements to be unfulfilled. (*Id.* ¶¶ 178-79.) With respect to their breach of contract claim, Borrower Defendants allege that, in contradiction to the terms of the Loan Agreement, the Original Lender made an oral promise to Borrower Defendants, permitting Borrower Defendants to commence construction at the Release Parcel prior to the completion of the Condo Conversion. (*See id.* ¶¶ 169, 172.) Borrower Defendants allege that they commenced construction at the Release Parcel, prior to completing the Condo Conversion, and completed all requirements for the Property Release. (*Id.* ¶¶ 170-72.) Borrower Defendants allege that, nevertheless, Plaintiff refused to release the lien encumbering the Release Parcel. (*Id.* ¶¶ 183, 191.)

Although the breach of contract and breach of implied covenant claims are both concerned with the Property Release, a similarity Borrower Defendants acknowledge, (*see* Defs.' Opp'n at 9), Borrower Defendants argue that the conduct underlying their breach of contract differs from that underlying their breach of the implied covenant of good faith and fair dealing. On this point, Borrower Defendants are correct. Borrower Defendants breach of contract claim is premised on Plaintiff's refusal to release the lien, despite the Original Lender's alleged oral promise and Borrower Defendants completion of all requirements set out in the Loan Agreement. (*See* Defs. Counterclaims ¶¶ 183, 191.) On the contrary, Borrower Defendants' breach of implied covenant of good faith and fair dealing is premised on Plaintiff's alleged additions of requirements for the Property Release, which were not listed in the Loan Agreement.

15

(*See id.* ¶ 204.) As such, the facts underlying these claims are different. In this regard, Borrower Defendants' claim for breach of the implied covenant of good faith and fair dealing is not duplicative of their breach of contract claim. *Cf. Zam & Zam Super Mkt., LLC*, 736 F. App'x at 278-79; *Deutsche Bank Nat. Tr. Co.*, 810 F.3d at 869; *Cruz*, 720 F.3d at 125. This, however, does not end the Court's inquiry, as the Court must also assess whether the relief sought under this claim is intrinsically tied to the breach of contract. *See JN Contemp. Art LLC*, 29 F.4th at 128. It is.

According to Borrower Defendants, Plaintiff's inclusion of conditions as to the Property Release, which were not included in the Loan Agreement, and the resulting "destruction of their rights under the Loan Agreement" constitute the basis for their breach of implied covenant of good faith and fair dealing claim. (Defs.' Opp'n at 7.) The Court disagrees. Borrower Defendants' distinction between the injury alleged in their breach of the implied covenant claim, i.e., the destruction of their rights under the Loan Agreement, and that alleged in their breach of contract claim, i.e., failure to release the lien encumbering the Release Parcel, raises semantics over substance. The rights that Borrower Defendants allege to be destroyed are the very rights they claim to be violated in the claim for breach of contract. That is, both claims arise from the injury that is Plaintiff's failure to release the lien encumbering the Release Parcel. Further, Borrower Defendants alleges the same damages for its beach of the implied covenant and breach of contract claims. (*See* Defs.' Counterclaims ¶¶ 193, 200, 207.) As a result, Borrower Defendants' claim for a breach of the implied covenant of good faith and fair dealing is duplicative of their breach of contract claim and therefore ripe for dismissal. *Zam & Zam Super Mkt., LLC*, 736 F. App'x at 278-79; *Deutsche Bank Nat. Tr. Co.*, 810 F.3d at 869; *Cruz*, 720 F.3d at 125.

Borrower Defendants' claim for breach of the implied covenant of good faith and fair dealing is dismissed accordingly.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss is GRANTED and Borrower Defendants' counterclaims are DISMISSED. Ordinarily, "[l]eave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kohn v. Esposito*, No. 19-CV-2163, 2021 WL 1163071, at *3 (E.D.N.Y. Mar. 26, 2021) (quoting *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)). Specifically, "when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)). "Allowing a party to replead claims would be futile where the problems with the causes of action are substantive and would not be cured with better pleading." *Tasaka v. Bayview Loan Servicing, LLC*, No. 22-CV-2368, 2023 WL 6308075, at *3 (E.D.N.Y. Sept. 27, 2023) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), *appeal dismissed* (Feb. 13, 2024)). Because the Court concludes that leave to amend would be futile, the Court declines to grant Plaintiff leave to amend his complaint.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2025

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

17